UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BRIAN D. TRANK,

                Plaintiff,

    -v-

ANDREW SAUL,
Commissioner of Social Security,[1]

                Defendant.

_____

18-CV-01002-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 16)

Plaintiff Brian Trank ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying him Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 9) is granted, defendant's motion (Dkt. No. 14) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff filed an application for DIB on March 2, 2015, alleging disability since September 17, 2013 due to low back injury, spinal impairment, depression and arthritis.

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

(*See* Tr. 179, 186, 205, 2017)[2]  Plaintiff also protectively filed an application for SSI on March 3, 2015.  (Tr. 186)  Plaintiff's disability benefits application was initially denied on May 20, 2015.  (Tr. 65-66)  Plaintiff filed a written request for a hearing on May 27, 2015. (Tr. 107)  A hearing was held before Administrative Law Judge Hortensia Haaversen ("the ALJ") on April 12, 2017.  (Tr. 31-64)  Plaintiff, who was represented by counsel, testified at the hearing.  (*Id.*)  The ALJ also received testimony from Vocational Expert Randolph Salmons ("the VE").  (*Id.*)  On June 14, 2017, the ALJ issued a decision finding that plaintiff's condition did not meet the standard for disability, as defined by the Act, from September 17, 2013 through the date of the decision.  (Tr. 12-30)  The Appeals Council denied plaintiff's request for review of the ALJ's determination on July 16, 2018, and this action followed.  (Tr. 1-3)

Born on June 11, 1968, plaintiff was forty-five years old on the alleged disability onset date.  (Tr. 23, 179)  He graduated high school, attended Erie Community College for two semesters, and has past work experience as a bus driver and computer technician.  (Tr. 23, 35-37, 43, 208)

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks

---

[2] References to "Tr." are to the administrative record in this case.

and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

3

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).  The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A).  The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process."   20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity."  *Id.* §404.1520(b).  If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience."  *Id.*  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment."  *Id.* §404.1520(c).  To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."

*Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.*  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1).  If the claimant can adjust to other work, he or she is not

disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ first found that plaintiff met the insured status requirements of the Act through December 31, 2016. (Tr. 17)  The ALJ then followed the required five-step analysis for evaluating plaintiff's claim.  Under step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 17, 2013.  (*Id.*)  At step two, the ALJ found that plaintiff has the severe impairment of degenerative disc disease of the low back.[3]  (*Id.*)  At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 18-19)  Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> [T]he [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he could lift and carry 10 pounds occasionally and less than ten pounds frequently.  He could stand or walk for two hours in an eight-hour workday and sit for six hours in an eight-hour workday.  He could occasionally perform postural activities.

(Tr. 19-23)

---

[3] The ALJ also found, at step two, that plaintiff's medically determinable mental impairment of depression does not cause more than minimal limitation in plaintiff's ability to perform basic mental work activities and is therefore non-severe.  (Tr. 18)

Proceeding to step four, the ALJ concluded that plaintiff is not capable of performing his past relevant work.  (Tr. 23)  The ALJ went on to find that based upon plaintiff's age, education, work experience, RFC and the testimony of the VE, there are jobs which exist in significant numbers in the national economy which plaintiff can perform, such as document preparer, surveillance system monitor, and assembler/table worker.  (Tr. 23-24)  Thus, the ALJ ultimately concluded that plaintiff has not been under a disability, as defined by the Act, from September 17, 2013 through the date of the decision.  (Tr. 24)

IV.    *Plaintiff's Challenges*

Plaintiff argues that the ALJ erred by failing to evaluate opinion evidence by his treating physical therapists.  (*See* Dkt. No. 9-1 (Plaintiff's Memo. of Law))  For the reasons stated below, the Court agrees that the ALJ should have considered the medical findings and opinions of plaintiff's physical therapists.

An ALJ is required to "evaluate every medical opinion [she] receives, regardless of its source."  *Pena v. Chater*, 968 F. Supp. 930, 937 (SDNY 1997), *aff'd* 141 F.3d 1152 (2d Cir. 1998).  Because the Commissioner considers a physical therapist to be an "other source", rather than an "acceptable medical source", a physical therapist's opinion is not entitled to controlling weight.  *Martino v. Comm'r of Soc. Sec.*, 339 F. Supp. 3d 118 (WDNY 2018); S.S.R. 06-03p, 2006 SSR LEXIS 5, 2006 WL 2329939 (S.S.A. Aug. 9, 2006).  However, an ALJ is still required to weigh opinion evidence from a physical therapist, and, in rendering the disability determination, should explain the weight afforded to the opinion and why.  *See* 2006 SSR LEXIS 5, *5 (Pursuant to the Commissioner's regulations, opinions from other medical sources are "important and should be evaluated

on key issues such as impairment severity and functional effects."); *Piatt v. Colvin*, 80 F. Supp. 3d 480, 493 (WDNY 2015) (An ALJ is "free to decide that the opinions of 'other sources'…are entitled to no weight or little weight," but "those decisions should be explained.")  Factors to be considered in determining how much weight to give to a physical therapist's opinion include the examining and treating relationship, the frequency of treatment, whether the opinion is well explained, and whether the opinion is supported by other evidence in the record.  *See* 20 C.F.R. §§404.1527(f)(1) and 404.1527(f)(2). Indeed, it is especially important for an ALJ to explain the weight afforded to the opinion of an "other source", such as a physical therapist, where the source had a long-term treating relationship with the claimant or their findings may affect the outcome of the case. *See* 2006 SSR LEXIS 5, *5 (An ALJ should "generally explain the weight given" to a physical therapist's opinion "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case."); *Pogoselski v. Barnhart*, 03-CV-2914, 2004 U.S. Dist. LEXIS 9029 (EDNY May 19, 2004) (finding that "some weight should still have been afforded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); *Acevedo v. Colvin*, 20 F. Supp. 3d 377, 389 (WDNY 2014) ("[T]he opinions of physical therapists may constitute substantial evidence where the opinions are well documented and supported by the medical evidence.")

On October 30, 2014, plaintiff began treatment at Phoenix Physical Therapy for severe back and leg pain resulting from an injury sustained at work when the bus he was driving "bottomed out." (Tr. 358)  The physical therapist's treatment notes on that date

indicate that plaintiff had poor posture, flattened lumbar lordosis in standing, limited range

of motion, and moderate to severe tenderness with palpation to bilateral lumbar erector

spinae.  (Tr. 358)  The therapist also indicated, in the portion of the treatment notes

labeled "objective", that plaintiff was "unable to sit, get up from a seated position, bend

forward, lift his kids or perform household chores without moderate pain." (Id.)  Plaintiff

was diagnosed with consistent posterior disc derangement and bilateral radiculopathy.

(Id.)  Plaintiff returned for physical therapy treatments on November 6, 2014, January 15,

2015, January 19, 2015, January 22, 2015 and March 17, 2015. (Tr. 354-357, 423)[4]

Treatment notes from those appointments reflect the same objective findings as noted

during the first visit, and on each visit the treating therapist indicated that plaintiff was

unable to sit, rise from a seated position, bend forward, or lift his children without pain.

(Id.)  Plaintiff next treated at Phoenix Physical Therapy on September 26, 2016.  (Tr. 424)

Treatment notes on that date reflect that plaintiff's range of motion had further decreased,

he was experiencing shooting pain down his left leg, and he continued to have poor

posture as well as moderate to severe tenderness.  (Id.)  The treating therapist again

noted that plaintiff was unable to sit, rise from a seated position, bend forward, or lift his

children without pain.  (Id.)  These findings remained the same when plaintiff returned for

physical therapy treatments on September 28, 2016, October 5, 2016, October 11, 2016,

October 17, 2016, October 20, 2016, November 14, 2016 and November 28, 2016.  (Tr.

425-432)   During each of plaintiff's physical therapy sessions, his treatment was

consistently focused on improving pain, range of motion and functional abilities. (Id.) On

his last visit, however, plaintiff's range of motion had not improved, he continued to have

---

[4] Plaintiff saw four physical therapists during the entire course of his treatment at Phoenix Physical
Therapy. (Tr. 354-59, 422-33)  As explained herein, all of their findings were consistent.

9

moderate to severe tenderness, and his pain was recorded as 5-8 out of 10.  (Tr. 432)
The treating therapist's statement as to plaintiff's inability to sit, rise from a seated
position, bend, lift or perform household chores without pain also remained unchanged.
(*Id.*)

In determining that plaintiff was not disabled under the Act, the ALJ concluded that
plaintiff is capable of sedentary work, with the ability to lift and carry 10 pounds
occasionally and less than ten pounds frequently.  (Tr. 19)  The ALJ also found that
plaintiff has the ability to stand and walk for two hours in an eight-hour day and to sit for
six hours in an eight-hour work day.  (Tr. 19)  The RFC is inconsistent with the physical
therapists' findings that plaintiff has limited range of motion, moderate to severe back
tenderness, posterior disc derangement and bilateral radiculopathy.  The RFC is also
incompatible with the physical therapists' assessment that plaintiff is unable to sit, rise
from a seated position, bend forward, lift his children or complete household chores
without pain.  Despite the fact that the ALJ is required to evaluate every medical opinion
in the record, the ALJ gave no indication that she reviewed and considered the physical
therapists' findings in fashioning the RFC.  This oversight is especially significant here,
where a review of the relevant factors indicate that consideration of the physical
therapists' findings could change the outcome of the case.   Indeed, plaintiff had a
longstanding relationship with the providers at Phoenix Physical Therapy.  Their medical
assessments were detailed and based on numerous examinations as well as treatment
sessions.  Further, their findings were consistent over the course of 14 treatments with
four different providers spanning two years. *See Bulger v. Astrue*, 6:07-cv-542, 2009 U.S.
Dist. LEXIS 56792, *29 (NDNY July 1, 2009) (where physical therapist evaluated and

treated claimant extensively for over two years, the ALJ's "dismissal of her opinion without adequate explanation was inappropriate in light of the considerable extent and duration of her professional evaluation of claimant"); *Brown v. Astrue*, 4 F. Supp. 3d 390, 400 (NDNY 2012) (although the ALJ was not required to give controlling weight to treating physical therapist's assessment of "significant disability" with functional losses in, *inter alia*, walking, working, carrying, standing, squatting and lifting, the assessment should have been addressed and afforded some consideration, especially since the therapist treated the claimant on numerous occasions during the relevant period).   Moreover, the physical therapists' findings here were consistent with the functional limitations found by Dr. Gary Nelson, plaintiff's treating physician.   A Physical Medical Source Statement completed by Dr. Nelson on February 8, 2017 indicated that plaintiff has limited range of motion, joint tenderness, can sit for less than two hours total during an eight-hour work day, and can stand or walk for less than two hours total in an eight-hour work day.   (Tr. 452-55)   *See Mejia v. Barnhart*, 261 F. Supp. 2d 142, 148, (NDNY 2003) (despite being an "other source", more weight should have been afforded to the treating therapist's opinion, since she saw plaintiff on a regular basis and offered a diagnosis consistent with plaintiff's treating psychiatrist).

The Commissioner argues that the ALJ was not required to discuss the portions of the physical therapists' reports explaining plaintiff's inability to sit, rise from a seated position, bend over, or lift without pain, because those statements are not opinion evidence.  The Commissioner contends that these statements are likely "a recounting of [p]laintiff's [subjective] complaints" rather than "a statement of what plaintiff can still do despite his impairments." (*See* Dkt. No. 9-1 (Plaintiff's Memo. of Law)).  To begin, all of

the statements regarding plaintiff's inability to sit, rise from a seated position, bend over, or lift without pain are listed in the "objective" sections of the physical therapy treatment notes, along with other medical assessments and findings by the provider as to plaintiff's condition and abilities.   The treatment notes contain a separate section labeled "subjective", which include plaintiff's descriptions of his symptoms.  The statements as to plaintiff's difficulties in sitting, rising, bending, and lifting are also consistent with the therapists' assessment of plaintiff's back condition, range of motion and tenderness. Thus, the Court is not convinced that these statements are merely a recitation of plaintiff's subjective complaints of pain.  Moreover, while the ALJ was entitled to reject the physical therapists' findings, she must explain that determination in light of the relevant factors noted above.   *See Sixberrt v. Colvin*, 7:12-CV-1231, 2013 U.S. Dist. LEXIS 134688 (NDNY Sept. 20, 2013) ("the ALJ erred in failing to properly determine the weight assigned to [the physical therapist's] opinion under the regulations and in failing to sufficiently explain the weight assigned.")   Here, the ALJ did not discuss the physical therapists' findings in any manner.  Thus, the Court cannot determine whether the ALJ rejected the statements about plaintiff's inability to sit, rise, bend, or lift without pain because (1) she considered them subjective complaints rather than opinion evidence; (2) she considered them opinion evidence but found, for other reasons grounded in the record, that they were not entitled to weight; or (3) she failed to consider them at all. Indeed, the Commissioner may not now substitute their own rationale when the ALJ failed to provide one.   *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.")

For these reasons, the Court finds that remand is appropriate for the Commissioner to consider the physical therapists' treatment notes and the findings contained therein.

Plaintiff also argues that the ALJ erred by rejecting the opinion of Dr. Gary Nelson, his treating physician. (*See* Dkt. No. 9-1 (Plaintiff's Memo. of Law)) The Court agrees.

As noted above, plaintiff injured his back while working as a bus driver. (Tr. 38) Following this injury, plaintiff regularly treated with Dr. Nelson, his primary care physician at South Towns Internal Medicine, from June 2012 through February 2017. (Tr. 360-93, 452-55, 456-86) On February 8, 2017, Dr. Nelson completed a Physical Medical Source Statement on behalf of plaintiff. (Tr. 452-55) Therein, Dr. Nelson indicated that plaintiff has poor range of motion, leg weakness, joint tenderness, low back pain, and shooting pain down his back and legs. (*Id.*) Dr. Nelson opined that: (1) plaintiff can only sit or stand for fifteen minutes at a time before needing to change position; (2) plaintiff can sit for a total of less than two hours in an eight-hour work day; and (3) plaintiff can stand for a total of less than two hours in an eight-hour work day. (*Id.*) He opined that plaintiff can rarely lift ten pounds and occasionally lift less than ten pounds. (*Id.*) Dr. Nelson also opined that plaintiff would need six unscheduled breaks from work over the course of an eight-hour work day and that plaintiff was likely to be absent from work more than four days a month. (*Id.*) The ALJ afforded only partial weight to Dr. Nelson's opinions as to plaintiff's functional limitations. (Tr. 22)

The Commissioner's regulations as well as Second Circuit precedent "mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).

To that end, the "treating physician rule" requires that "the opinion of a claimant's treating physician as to the nature and severity of [an] impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with the other substantial evidence in the record'." *Id.*; *quoting Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). Where an ALJ decides not to credit the opinion of a treating physician, the following factors should be considered: "(1) the frequency, length, nature, and extent of the treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96; *quoting Selian v. Asture*, 708 F.3d 409, 418 (2d Cir. 2013). Failure to explicitly consider these factors before declining to give controlling weight to a treating physician's opinion is procedural error. *Estrella*, 925 F.3d at 96. Where an ALJ commits this procedural error and fails to give good reasons for the weight assigned to a treating physician's opinion, remand is warranted. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). *See also Miller v. Colvin*, 122 F. Supp. 3d 23, 28 (WDNY 2015) ("Those good reasons must be supported by evidence in the case record, and must be sufficiently specific.")

In assigning partial weight rather than controlling weight to Dr. Nelson's opinion, the ALJ notes only that (1) the limitations found by Dr. Nelson are not supported by medical imaging, including an MRI on May 19, 2014, a CT scan on July 17, 2014 and an EMG on September 2, 2011; and (2) plaintiff "maintains an active, albeit reduced, lifestyle, maintains full strength and ambulates without assistance." (Tr. 22) The reasons offered by the ALJ cover only one of the factors set forth by the Commissioner's regulations – the consistency of the opinion with the record as a whole. The ALJ did not address how often

14

Dr. Nelson treated plaintiff or the length, nature and extent of their treatment relationship, which is significant because Dr. Nelson was plaintiff's primary care physician for ten years and regularly treated plaintiff for his back injury over a period of five years.  The ALJ also did not discuss whether Dr. Nelson's opinions were well-supported and well-documented. Furthermore, the ALJ does not discuss, in any detail, how Dr. Nelson's opinion compared to other medical evidence or opinions in the record, other than stating they were not supported by medical images on three occasions over five years of treatment.  The ALJ's failure to provide a robust discussion of the applicable factors contravenes the treating physician rule.

Moreover, the reasons offered by the ALJ for ascribing Dr. Nelson's opinion only partial weight are not supported by substantial evidence and do not qualify as "good reasons."  The Commissioner is correct that the May 19, 2014 MRI cited by the ALJ did not show significant nerve root compression or stenosis.  (Tr. 351-52)   However, that same MRI was abnormal as to the lumbosacral spine due to probable diffuse idiopathic skeletal hyperostosis within the lower thoracic spine.  (*Id.*)  The July 17, 2014 CT scan showed prominent anterior osteophytes, or bone spurs.  (*Id.* at 353)  Moreover, regular examinations by Dr. Nelson from June 2012 through February 2017 indicated that plaintiff was consistently experiencing severe, chronic pain requiring prescription medication and injections; tenderness; muscle tightness; and limited range of motion.  (Tr. 362-63, 366-68, 372-76, 379, 381, 385, 390-92, 463-68, 470, 477, 483-85)   Dr. Nelson diagnosed spasms in plaintiff's spinal muscles, painful shoulder range of motion, and positive Hawkins and impingement signs.  (Tr. 363)  Dr. Nelson's treatment notes also indicate that plaintiff had a positive soda can maneuver for pain and weakness as well as a positive

arm drop test for pain.  (*Id.*)  These findings are consistent with the records from plaintiff's treating physical therapists described in detail above.  These findings are also in line with plaintiff's treatment with Dr. Michael Geraci, a spine and sports medicine specialist, during the relevant time period.  (Tr, 313-50, 487-88)  In 2013, plaintiff received numerous injections from Dr. Geraci to treat his back and leg pain.  (Tr. 308-10)  On July 17, 2014, Dr. Geraci noted that plaintiff continued to have 75% back pain, 25% leg pain and right lower extremity pain.  (Tr. 324)  In 2015, Dr. Geraci diagnosed plaintiff with L5-S1 focal disc herniation, right S1 radiculitis, chronic low back pain, and right sciatica.  (Tr. 491)  Thus, the functional limitations assessed by Dr. Nelson were well-supported by his own treatment notes and consistent with other medical evidence in the record.

The ALJ's other reason for assigning partial weight to Dr. Nelson's opinion, that "plaintiff maintained an active, yet reduced lifestyle", is similarly deficient.  Contrary to the ALJ's conclusion, plaintiff's hearing testimony is actually consistent with Dr. Nelson's findings because it shows his daily activities and abilities to be limited.  Plaintiff testified that he experiences shooting pain and numbness down his legs when he sits for long periods of time.  (Tr. 52)  He testified that he is unable to do much around the house and that his girlfriend cleans, does the laundry, shop and cooks.  (Tr. 52- 53)  Plaintiff testified that he is no longer able to fish or engage in the other active hobbies he previously enjoyed and that he spends a significant portion of his day laying down.  (Tr. 47-48, 52-53)  In finding that plaintiff is capable of sedentary work, the ALJ seems to rely heavily on the fact that plaintiff cares for his minor children while his girlfriend works outside the home.  (Tr. 21)  The Court does not find this reasoning persuasive.  Plaintiff testified that he takes care of his children, but described it as "difficult" and "very hard."  (Tr. 38-39)

Plaintiff also explained that his girlfriend has to "set everything out for [him] to make things easier", that he is unable to change the children's diapers on the changing table, and that he has difficulty lifting them.  (Tr. 41, 48)  *See Harris v. Colvin*, 149 F. Supp. 3d 435, 444-45 (WDNY 2016) (remand required where the ALJ failed to recognize that there are "differences between being a parent, caring for one's children at home, and performing substantial gainful employment in the competitive workplace on a regular and continuing basis").  Furthermore, plaintiff's ability to engage in limited child care is not inconsistent with many of the functional limitations assessed by Dr. Nelson, including Dr. Nelson's opinion that plaintiff is unable to sit for more than a total of two hours during an eight-hour work day.   Indeed, caring for minor children would not require plaintiff to sit for an extended period of time and would give plaintiff the ability to change positions much more often than would be permitted in the type of sedentary position described in the RFC. Likewise, the ALJ's reasoning that plaintiff "maintains full strength and ambulates without assistance", even if accurate, does not account for plaintiff's ability to fulfill the sitting requirements of the RFC.

Lastly, the ALJ's assignment of partial weight to Dr. Nelson's opinion is problematic because it is vague.  The ALJ indicates that "the overall evidence supports, some, but not all of Dr. Nelson's limitations."  (Tr. 22)   However, the ALJ does not explain which limitations were in fact supported and which were not.  The majority of the functional

limitations assessed by Dr. Nelson are incompatible with the RFC.[5]  Therefore, the Court

is not able to ascertain which functional limitations found by Dr. Nelson the ALJ actually

credited, and is further unable to ascertain how plaintiff could perform the work described

by the ALJ in light of those limitations.  *See McCarthy v. Colvin*, 66 F. Supp. 3d 315, 323

(WDNY 2014) (an ALJ is required to support her explanations with "sufficiently specific"

evidence);  *McGuire v. Comm'r of Soc. Sec.*, 18-CV-6554, 2020 U.S. Dist. LEXIS 29907

(WDNY Feb. 21, 2020) (remand required where ALJ gave only conclusory reasons for

assigning partial weight to opinion evidence and "[t]he provided reasoning [did] not

provide any insight into what portions of the doctor's opinion the ALJ credited as being

consistent with the evidence of record.")

In sum, the ALJ violated the treating physician rule by failing to provide good

reasons for assigning Dr. Nelson's opinion partial weight and by not consulting the factors

in 20 C.F.R. §404.1527(c) in deciding what weight to give the opinion.  Thus, the case is

also remanded for further consideration and proper application of the treating physician

rule.

Finally, plaintiff argues that the ALJ improperly assessed his credibility.  (*See* Dkt.

No. 9-1 (Plaintiff's Memo. of Law))  "A treating physician's opinion is a significant part of

the evidence that is weighed in determining credibility of a claimant under 20 C.F.R.

---

[5] As stated herein, Dr. Nelson's opinion that plaintiff could sit for a total of less than two hours during an eight-hour workday is inconsistent with the RFC.  Also inconsistent with the RFC are Dr. Nelson's findings that plaintiff could stand for a total of less than two hours during an eight-hour day, could rarely lift ten pounds and could only occasionally lift less than ten pounds.  During the hearing, the VE testified that if an individual were to be absent four days or more per month, they would not be able to maintain employment.  (Tr. 60-61)  The VE also testified that work could not be sustained if an individual needed to take six breaks per day to rest or lie down for an average of 15 to 20 minutes at a time.  (Tr. 61)  Thus, Dr. Nelson's assessments as to how often plaintiff would need an unscheduled break and how often he was likely to be absent, if credited, would also preclude plaintiff from working.

§404.1529." *Lasker v. Comm'r of Soc. Sec.*, 15-CV-923, 2017 WL 130267, *8 (WDNY Jan. 13, 2017) (*quoting Gagovits v. Colvin*, 15-CV-3246, 2016 WL 4491537, *13 (EDNY Aug. 25, 2016)).   Therefore, because the Court is remanding this matter for review of the physical therapy records and proper application of the treating physician rule, the ALJ should address plaintiff's credibility on remand as well.[6]  *See id.*

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:        May 19, 2020
              Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

---

[6] Plaintiff also argues that remand is warranted because the ALJ failed to reconcile her RFC with the psychiatric consultative examiner's opinion. (*See* Dkt. No. 9-1 (Plaintiff's Memo. of Law))  Because the Court finds that the matter should be remanded for a new RFC determination for the reasons stated herein, the Court does not specifically address this argument.  On remand, the Commissioner should consider the psychiatric consultative examiner's opinion in light of all of the other evidence in the record when fashioning a new RFC.